IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JAMES KIMBROUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:12-cv-782 |
| ) | |
| LOIS DEBERRY SPECIAL NEEDS FACILITY and ) | Judge Sharp |
| THOMAS WALDON, DDS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff James Kimbrough, a state prisoner incarcerated at the Lois M. DeBerry Special Needs Facility ("DSNF") in Nashville, Tennessee, has filed a *pro se* complaint under 42 U.S.C. § 1983 (ECF No. 1) alleging that the prison and prison dentist have been and remain deliberately indifferent to the plaintiff's serious medical needs. The plaintiff proceeds *in forma pauperis*. His complaint is before the Court for an initial review pursuant to 28 U.S.C. § 1915(e)(2)(B) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *reversed on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

**I.    Factual Allegations**

On June 19, 2012, the plaintiff was escorted to DSNF's dental department complaining of a toothache. The dentist, Dr. Thomas Waldon, determined that the problem tooth needed to be pulled. Dr. Waldon pulled the tooth but with great difficulty. The plaintiff complains the local anesthesia quickly wore off shortly after the procedure and that he has been in tremendous pain ever since the tooth was pulled. He was prescribed a three-day course of oral antibiotics and a week's worth of ibuprofen for the pain, but the pain never subsided. The plaintiff alleges that, aside from the pain, something has felt "wrong" since the tooth was pulled—the area of the extraction failed to heal and became very swollen and "hot." (ECF No. 4, at 6.) The side of his gum near where the tooth was pulled began bulging. The plaintiff insists that Dr. Waldon broke off his tooth rather than completely extracting it, and that the remaining portion of his tooth is "trying to p[ro]trude through the front side of [his] gum." (*Id.*)

At a follow-up appointment with Dr. Waldon, Dr. Waldon told the plaintiff that the swelling was just "natural damage" to the "housing" of the tooth caused by the extraction. But the plaintiff was put back on

antibiotics, this time for a week, and continued on ibuprofen. The pain and swelling, however, did not subside, and the area remained "hot." (*Id.* at 7.)

Thereafter, the plaintiff "begged and pleaded" with the medical staff to be seen by the dentist again, but the dentist refused to see the plaintiff, and told the staff members of the plaintiff's housing unit that nothing was wrong with the plaintiff and that the staff should ignore his complaints. However, as a result of the plaintiff's filing a grievance, DSNF Warden Jewel Steele instructed the dentist to re-examine the plaintiff. The next day, the plaintiff was escorted back to see the dentist, who acted angry and agitated but nonetheless performed an X-ray of the plaintiff's socket. The dentist reported back to the plaintiff ten minutes later that the X-ray showed that no tooth parts remained in the socket. The plaintiff insists that the dentist is lying and simply will not admit that he made a mistake in extracting the tooth.

The plaintiff maintains that he is still in excruciating pain and that he is sure something is wrong. Dr. Waldon, however, refuses to see him again and insists that there is nothing wrong. The medical doctor over the plaintiff's housing unit at DSNF refuses to examine the plaintiff's mouth because he does not "do mouths." (ECF No. 4, at 12.) The plaintiff's subsequent grievances and appeals to the Warden have been denied. The plaintiff states that he seeks intervention from this Court because he remains in desperate pain, is not able to get a second opinion, and cannot persuade Dr. Waldon to examine him again. The plaintiff states that the area is now abscessed; he remains convinced that a portion of broken tooth remains in his mouth, and he believes he is in need of oral surgery to correct the problem.

The complaint was filed July 27, 2012, approximately five weeks after the extraction. On August 6, 2012, the plaintiff submitted a supplemental letter to the Court advising that he remains in constant, intolerable pain, and that the tooth socket appears to be infected, but the medical staff and dentist continue to refuse to see him and insist that nothing is wrong.

For relief, the plaintiff asks only to be examined by a dental specialist. He does not seek monetary damages.

## II. Standard of Review

Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any portion of a civil complaint that (1) fails to state a claim upon which relief can be granted, or (2) is frivolous. The Sixth Circuit has confirmed that "the dismissal standard articulated in [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)] and [*Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544 (2007),] governs dismissals for failure to state a claim under [§ 1915(e)] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### III.     Analysis and Discussion

To state a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### A.     *The Claim against DeBerry Special Needs Facility*

As an initial matter, the Court finds that DSNF, the state prison facility itself, is not a person or a legal entity that can be sued under 42 U.S.C. § 1983. *See Powell v. Blount Cnty. Adult Detention*, No. 3:07-CV-29, 2007 WL 412073, at *1 (E.D. Tenn. Feb. 2, 2007) ("Blount County Detention . . . is not a suable entity within the meaning of 42 U.S.C. § 1983); *Shoemaker v. Greene Cnty. "Jail" Detention Center*, No. 2:07-CV-124, 2007 WL 2159295, at *1 (E.D. Tenn. July 26, 2007) ("The Greene County 'Jail' Detention Center is a building and not a 'person' who can be sued under § 1983.").

Further, to the extent the prison is sued in its "official capacity," because it is a state prison operated by the Tennessee Department of Corrections ("TDOC"), the prison is immune from suit. The Eleventh Amendment to the United States Constitution bars § 1983 claims against a State or any arm of

a State government. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). Suit against the facility is in reality suit against TDOC itself. TDOC is considered part of the State of Tennessee for purposes of federal civil-rights claims, and is therefore not a suable entity under § 1983, either for damages or injunctive relief. *See Hix v. Tenn. Dep't of Corrs.*, 196 F. App'x 350, 355 (6th Cir. 2006) ("The TDOC is not a 'person' within the meaning of § 1983, and is therefore not a proper defendant." (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989))). This defendant is therefore immune from suit under § 1983. The claims against DSNF will be dismissed with prejudice.

### B. The Claim against Dr. Thomas Waldon

The Eighth Amendment, by its terms, prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its application by the courts, the Eighth Amendment actually protects a wide assortment of interests, and has been specifically construed to prohibit the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The amendment imposes affirmative duties on prison officials to "assume some responsibility for [each prisoner's] safety and general well being," and to "provide for his basic human needs," including medical care. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). "Contemporary standards of decency require no less." *Estelle v. Gamble*, 429 U.S. at 103–04.

In *Estelle*, the Supreme Court concluded that, although accidental or inadvertent failure to provide adequate medical care to a prisoner would not violate the Eighth Amendment, "deliberate indifference to the serious medical needs of prisoners" violates the Eighth Amendment, because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Id.* at 104. Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation, but the Supreme Court has clarified that the question of

whether a prisoner's claim based on prison officials' failure to provide adequate medical care involves both a subjective and an objective component: The objective prong asks whether the harm inflicted by the conduct is sufficiently "serious" to warrant Eighth Amendment protection. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle*, 429 U.S. at 103). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Under these standards, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.

In addition, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F. at 860 n.5. In sum, generally speaking, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir.2001).

The Court finds in this case that the plaintiff alleges an objectively serious enough condition to state a claim for violation of his rights under the Eighth Amendment based on his allegations of severe

pain, swelling, and inflammation. In addition, the Court finds that the facts as alleged by the plaintiff give rise to an inference of deliberate indifference on the part of Dr. Waldon. This case is distinguishable from those in which the plaintiff seeks damages for the past negligence of a prison doctor, as the plaintiff here does not seek monetary damages based on allegations of malpractice by Dr. Waldon. Instead, he seeks only prospective injunctive relief. His complaint is based on claims that Dr. Waldon is presently refusing to treat an ongoing serious medical condition. Thus, although the plaintiff has received some medical care, he is in essence complaining of the complete denial of care to treat a new or different problem that has arisen in the wake of the original extraction. His claims are therefore distinguishable from those in which the dispute concerns the adequacy of past treatment.

The Court expresses no opinion regarding the ultimate merit of the plaintiff's claims, but at this point in the proceedings finds that the complaint states a colorable claim against Dr. Waldon based on his deliberate indifference to the plaintiff's serious medical needs.

**IV.    Conclusion**

For the reasons set forth herein, the complaint will be dismissed as to the DeBerry Special Needs Facility. However, the claims against Dr. Waldon will be permitted to proceed. An appropriate order will enter.

_/s/ Kevin H. Sharp_
Kevin H. Sharp
United States District Judge