# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMES KIMBROUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | CASE NO. 3:12-0782 |
| | ) | JUDGE SHARP/KNOWLES |
| | ) | |
| THOMAS WALDON, DDS | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court upon three Motions filed by the pro se prisoner Plaintiff: (1) an "Emergency Motion to Acquire Emergency Oral Surgery" (Docket No. 4); (2) a "Motion" to allow Plaintiff to be treated by a dentist other than Defendant (Docket No. 29); and (3) a "Motion" requesting an independent second opinion "at the Court's discretion" (Docket No. 34). Only one of the foregoing Motions is a "stand alone" Motion. Docket No. 4. Some of Plaintiff's Motions are part of other documents that have been filed with the Court. Docket Nos. 29, 34. Some of Plaintiff's later Motions are not denominated at such, and are set forth in letters Plaintiff has written to Judge Sharp. Docket Nos. 41, 45. Defendant has filed a Response which addresses the major issue raised in Plaintiff's Complaint.[1]

Plaintiff is proceeding in forma pauperis. His allegations were extensively discussed in Judge Sharp's Memorandum Opinion entered August 17, 2012, which reflects the initial review

---

[1] Defendant's Response is headed "Defendant Thomas Waldon's Response in Opposition to Plaintiff's Motion for Independent Dental Treatment." Docket No. 42. There is, however, no document headed, "Motion for Independent Dental Treatment."

of this action pursuant to 28 U.S.C. § 1915(e)(2)(B). Docket No. 10. Essentially, Plaintiff complains that he went to the dental department of DeBerry Special Needs Facility (DSNF) on June 19, 2012, complaining of a toothache. He and the dentist, Defendant Waldon, determined that the tooth needed to be pulled, and Defendant Waldon pulled the tooth. Plaintiff was prescribed a three-day course of oral antibiotics and a weeks worth of Ibuprofen for pain, but the pain never subsided.

Two days later, Plaintiff again saw Dr. Waldon, who told Plaintiff that the swelling was just natural damage to the housing of the tooth caused by the extraction. Plaintiff was put on antibiotics for a week, and continued on Ibuprofen.

For some period of time, Dr. Waldon allegedly refused to see Plaintiff. Plaintiff filed a grievance, and, according to Plaintiff, DSNF Warden Jewel Steele instructed the dentist to re-examine Plaintiff. Plaintiff was escorted back to the dentist on June 26, 2012, who performed an x-ray of the affected area and advised Plaintiff that the x-ray showed no tooth parts remained in the socket.[2]

Plaintiff's Complaint was filed July 27, 2012. According to Defendant, Plaintiff's dental chart was reviewed by Helen Coleman, DDS, Regional Director of Dentistry for Corizon, on September 14, 2012. Docket No. 42, p. 2. Plaintiff and Defendant agree that Dr. Coleman examined him on November 27, 2012, and reviewed his x-ray (which Plaintiff avers was taken the day she saw him). According to Dr. Coleman, Plaintiff stated that he had been in pain for two months but that, "It's fine now." *Id*. Plaintiff denies making that statement.

Plaintiff is convinced that Defendant Waldon did not completely extract the tooth but

---

[2] Despite Plaintiff's statement, his grievance is dated June 23, 2012.

2

rather broke it off. He believes there is still part of the tooth left in his jaw, which has caused him a great deal of pain.

As Judge Sharp recognized in his Opinion, the only relief sought by Plaintiff in his Complaint is that he be examined by a dental care specialist for corrective treatment or surgery; Plaintiff does not seek money damages. Docket No. 10, p. 2.

The first of the instant Motions is an "Emergency Motion to Acquire Emergency Oral Surgery." Docket No. 4. The Motion asks that the Court "grant Plaintiff's request for Emergency Dental/Oral Surgery to correct the damages sustained on 6-19-2012 . . . ." Docket No. 4, p. 2. It is clear that the Motion at issue seeks injunctive relief. Plaintiff, however, has not discussed the requirements for an injunction, nor has Plaintiff submitted a Memorandum of Law as required by Local Rule 7.01(a).[3] Moreover, it is apparent from Plaintiff's filings that he seeks a "second opinion" from another dentist or oral surgeon. There is no indication that he can obtain such relief from Defendant Waldon.[4] Additionally, Plaintiff has now received a "second opinion" from Dr. Coleman.

For the foregoing reasons, the "Emergency Motion to Acquire Emergency Oral Surgery"

---

[3] In fact, none of the Motions addressed in this Report & Recommendation is accompanied by a Memorandum of Law.

[4] Plaintiff initially filed this action against Defendant Waldon and another Defendant, "Lois DeBerry Special Needs Facility." DSNF was dismissed from this action by Judge Sharp on August 17, 2012. Even viewing the situation at the time DSNF was still a party, there is no indication that DSNF could have provided the relief sought by Plaintiff. As Judge Sharp noted in his Memorandum Opinion, DSNF is part of the Tennessee Department of Correction, which is part of the State of Tennessee for purposes of federal civil rights claims, and it is "therefore not a sueable entity under § 1983, either for damages or injunctive relief." Docket No. 10, p. 4 (citation omitted).

(Docket No. 4) should be DENIED.

The second Motion is included in Plaintiff's Response to Defendant's Answer to the Complaint. Docket No. 29. Plaintiff states in part that he

> respectfully seeks an <u>order</u> from this Court to compel the Warden of this facility, Mrs. Jewel Steele, to allow the Plaintiff to be seen (and treated) by a Dentist other than Dr. Waldon . . . ."

(Underlining in original.)

The Warden, Mrs. Steele, is not a party to this action. Moreover, Plaintiff never alleges that he has not been "allowed" to be seen by a dentist other than Dr. Waldon. When he filed the Motion, Plaintiff apparently sought to compel Defendant, or someone, to provide him with a second opinion at Defendant's expense. Additionally, following the filing of the instant Motion, Plaintiff was given a "second opinion" by Dr. Coleman. For the foregoing reasons, the second "Motion" (Docket No. 29) should be DENIED.

The third Motion at issue is again included in another filing made by Plaintiff which is headed "Advisement to the Court/Motion." Docket No. 34. In that document, Plaintiff discusses his examination by Dr. Coleman on November 27, 2012. He states that on November 27 he was escorted to the prison's dental department, where he was informed that another dentist was going to examine him. Dr. Waldon's female assistant advised him that she needed to get an x-ray of the problem area, which she did. Dr. Waldon was not present. A woman who identified herself as "Dr. Coleman, DDS" stated to Plaintiff, "I'm here to give you a second opinion, Mr. Kimbrough." Docket No. 34, p. 3. Dr. Coleman examined Plaintiff and announced that "everything looks good" and that the x-ray showed a "nicely healing socket." *Id*., p. 4.

Plaintiff apparently does not believe that Dr. Coleman actually examined the x-ray that

was taken. Plaintiff also believes that the

> so-called "second opinion" was a hoax, a sham very far from legitimate, and it falls on the heels of this Plaintiff's November 7th filing which heavily ridiculed Dr. Waldon for not seeking a second opinion in the first place, and only after <u>the Plaintiff</u> sought a Court Order for such did Dr. Waldon and/or his attorneys fineally [*sic*] decide to obtain a second opinion which, not surprisingly, is now suddenly being provided by a source apparently affiliated with the Defendant and employed by the same employer.

*Id.*, p. 5-6 (underlining in original).

Because of these concerns, Plaintiff stated that he wish to "clarify" his earlier Motion (the second Motion discussed herein) to compel the Warden to allow him to be examined by a dentist not affiliated or associated with Dr. Waldon.

As Judge Sharp discussed in his previous Memorandum Opinion:

> [T]he Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." . . . Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state court law." . . .

Docket No. 10, p. 5 (citations omitted).

Moreover, Plaintiff is entitled to adequate medical care, not the medical care that he desires or believes he is entitled to. *Dotson v. Correctional Medical Services,* 584 F.Supp. 2d 1063, 1067 (W.D. Tenn. 2008). The *Dotson* Court stated in part as follows:

> The prisoner's right is to medical care – not the type or scope of medical care which he personally desires. A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983.

*Id.* (citations omitted).

5

Once again, Plaintiff has not provided any legal authority for the proposition that Defendant Waldon is somehow responsible for providing for Plaintiff to be examined by an independent dentist. As discussed above, Plaintiff has seen two different dentists apparently a total of four times and he has had two sets of x-rays done.

For the reasons discussed above, Plaintiff's third Motion (Docket No. 34) should be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. Clifton Knowles
United States Magistrate Judge