IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JAMES KIMBROUGH,  )
  )
    Plaintiff,  )
  )
  )   CASE NO. 3:12-cv-00782
v.  )   JUDGE SHARP/KNOWLES
  )
  )
THOMAS WALDON, DDS,[1]  )
  )
    Defendant.  )

# REPORT AND RECOMMENDATION

This matter is before the Court upon Defendant's Motion for Summary Judgment. Docket No. 57. In support of that Motion, Defendant has filed a supporting Memorandum of Law (Docket No. 56), a Statement of Undisputed Material Facts (Docket No. 55), the Affidavits of Defendant and Dr. Helen Coleman, DDS (Docket Nos. 57-1, 57-2), and Plaintiff's dental treatment records (Docket No. 57-3).

Plaintiff has not responded to the instant Motion or to Defendant's Statement of Undisputed Material Facts.

Plaintiff, an inmate housed at the Lois DeBerry Special Needs Facility ("DSNF") at all times relevant to the case at bar, filed this pro se, in forma pauperis, action pursuant to 42 U.S.C. § 1983, alleging that Defendant provided him negligent dental care, and then subsequently

---

[1] Plaintiff originally also sued the Lois DeBerry Special Needs Facility ("DSNF"), however DSNF was terminated as a party on August 17, 2012. *See* Docket No. 10. Accordingly Dr. Waldon is the only remaining Defendant.

1

denied him dental care, in deliberate indifference to his serious dental needs.  Docket Nos. 1, 4.[2]

Specifically, Plaintiff avers that Defendant extracted the wrong tooth, and did so in an exceedingly rough and forceful manner, such that it "took 12 hours just to get the bleeding to stop."  Docket No. 4.  Plaintiff avers that Defendant only prescribed a 3 day supply of Penicillin and a week's worth of Ibuprofen for pain.  *Id.*  Plaintiff further avers that the pain did not subside, that "it" became "very swollen and very 'hot,'" and that the front side of his gums was "'bulging' very badly where his tooth had been pulled."  *Id.*  Plaintiff states that he "quickly realized that it was the actual <u>tooth</u> that [Defendant] had broken-off in there which was trying to pertrude [*sic*] through the front side of [his] gum."  *Id.*  Plaintiff complains that received a follow-up appointment, during which he was prescribed more antibiotics and Ibuprofen, but that neither the pain nor the swelling subsequently subsided, and that the "area also remained 'hot.'"  *Id.*

Plaintiff avers that he "literally begged and pleaded" to see Defendant again, but that Defendant "refused" to see him, telling the staff that nothing was wrong with him and that they should ignore him because the tooth had already been extracted.  *Id.*  Plaintiff further avers that he filed grievances and notified the Warden.  *Id.*  Plaintiff contends that, at the Warden's instruction, "a clearly 'agitated' and 'angry'" Defendant took x-rays of the tooth socket,  re-

---

[2] In the "'Statement of Facts" section of Plaintiff's original Complaint, Plaintiff wrote simply "Please see detailed Complaint <u>attached:</u> [*sic*]."  *See* Docket No. 1, p. 5.  There is, however, no attachment to his Complaint.  *See* Docket No. 1.  Rather, on the same date that Plaintiff filed his original Complaint, he also filed an "Emergency Motion To Acquire Emergency Oral Surgery."  Docket No. 4.  Plaintiff's "Emergency Motion to Acquire Emergency Oral Surgery" contains a detailed statement of Plaintiff's claim and also contains copies of what appear to be Plaintiff's filed grievances and requests for dental treatment.  *See id.*  The undersigned will take Plaintiff's allegations from this document.

evaluated him, and informed him that "Nothing was in there." *Id.* Plaintiff contends that Defendant is lying as a cover up for his incompetence. *Id.* Plaintiff avers that he has notified everyone he can think of to notify and done everything he can think of to do in order to get his purported tooth remnant extracted and to resolve his extreme pain and now "abscessed" tooth, but to no avail. *Id.*

Plaintiff sues Defendant in his official and individual capacities. Docket No. 1. Plaintiff seeks "Emergency Oral Surgery" to remove the purported tooth remnant, and also seeks "Judge's discretion and recommendation." *Id.* Plaintiff subsequently amended his Complaint to add a request for $200 "per day from the date of his careless and inhumane procedure on this Plaintiff on June 19th 2012 until corrective dental treatment has been obtained by Plaintiff or the proper referral for corrective dental treatment has been made by Dr. Waldron for this Plaintiff . . ." Docket No. 16.

Defendant filed the instant Motion for Summary Judgment arguing that he neither rendered inadequate dental care to Plaintiff, nor denied Plaintiff dental treatment with deliberate indifference. Docket No. 56. Defendant also contends that there is no genuine issue as to material fact and that he is entitled to a judgment as a matter of law because: he consulted a second dental specialist, who concurred with his opinion; he, at all times, complied with the proper standard of care; and Plaintiff had not suffered a sufficiently serious dental need to constitute an Eighth Amendment violation. *Id.*

As has been noted, Plaintiff has not responded to the pending Motion or Statement of Undisputed Material Facts.

For the reasons set forth below, the undersigned concludes that, viewing all the facts and

inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and Defendant is entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendant's Motion for Summary Judgment be GRANTED, and that this action be DISMISSED.

## II. Facts[3]

Defendant is a Dentist in good standing, who has been licenced to practice general dentistry in the State of Tennessee for over 25 years. Docket No. 57-1, Affidavit of Thomas Waldon, D.D.S. ("Def. Aff."), ¶ 2. Defendant is familiar with the recognized standard of professional practice applicable to providing dental care to inmates in Nashville, Tennessee in 2012 (to at least the time of his Affidavit). *Id.*, ¶ 3. Defendant testifies to all the facts herein with a reasonable degree of medical certainty. *Id.*, ¶ 16.

Defendant has been employed by Corizon, Inc. to provide dental services to inmates at DSNF since May 2012. *Id.*, ¶ 3. Defendant is not employed by TDOC or the State of Tennessee. *Id.* Defendant has personal knowledge of the treatment rendered to Plaintiff, and has also reviewed Plaintiff's dental chart and x-rays. *Id.*

Defendant provided dental care to Plaintiff from June 19, 2012 to June 26, 2012. *Id.*, ¶¶ 3, 4. On June 19, 2012, Plaintiff advised Defendant that all of his teeth were hurting, but specifically pointed to tooth number 13 as the source of his pain. *Id.*, ¶ 4. Tooth number 13 is the second bicuspid, positioned in the upper left part of the mouth. *Id.* After Defendant examined Plaintiff's mouth and obtained an oral radiograph, Defendant determined that tooth

---

[3] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

4

number 13 was loose. *Id.* In his dental judgment, based on Plaintiff's subjective complaints and Defendant's findings during the objective examination, Defendant believed within a reasonable degree of dental certainty, that tooth number 13 was the likely cause of Plaintiff's pain. *Id.* Defendant therefore recommended its extraction. *Id.* Based on his assessment and the x-ray, Defendant determined that none of Plaintiff's other teeth, including tooth number 15, necessitated extraction or required any dental intervention at that time. *Id.*

During the June 19, 2012 visit, Plaintiff agreed to the extraction of tooth number 13, which was carried out completely and without difficulty, with the use of forceps. *Id.* Defendant utilized appropriate anesthetics during the extraction, and post-procedure, he prophylactically prescribed 600 milligrams of ibuprofen to be taken 3 times per day as needed, and an antibiotic for possible infection. *Id.*

Two days later, on June 21, 2012, Plaintiff returned to the dental clinic complaining of "tooth pain." *Id.*, ¶ 5. Defendant again performed an oral examination, which revealed redness around the extraction site of tooth number 13. *Id.* There were no other abnormal findings with respect to the tooth extraction site. *Id.* Based on his knowledge, training, and experience, Defendant opined that short-term pain was known to occur post-tooth extraction. *Id.* In order to reduce Plaintiff's pain and the risk of dry socket, Defendant appropriately administered a local anesthetic to the extraction site, and a gelfoam dressing was applied. *Id.* Defendant again prescribed 600 milligrams of ibuprofen to be taken 3 times per day for 2 days. *Id.* Plaintiff was instructed to return as needed. *Id.*

One week after the extraction, on June 26, 2012, Plaintiff returned to the dental clinic and stated that he felt like there was a tooth still in the tooth number 13 extraction site. *Id.*, ¶ 6.

Defendant again examined Plaintiff's mouth, including the extraction site, and found that the socket was healing within expected and normal limits, with no signs of infection or tooth fragments. *Id.* Defendant appropriately obtained another x-ray of Plaintiff's mouth, which confirmed that there was no tooth or tooth fragments in the socket. *Id.* Defendant did note some "slight spots" on Plaintiff's palate, but Plaintiff denied any trauma. *Id.* Using his dental judgment, Defendant determined that no dental treatment, including another surgical procedure or extraction, was necessary at that time, and he did not find a clinical explanation for Plaintiff's subjective complaints of pain. *Id.* Regardless, Defendant prescribed Plaintiff 400 milligrams of ibuprofen to be taken 3 times per day for another 3 days. *Id.* Plaintiff was instructed to return to the clinic as needed. *Id.* Defendant has not personally provided Plaintiff with dental care since that date. *Id.*

Helen L. Coleman, D.D.S., is a Dentist in good standing, who has been licenced to practice general dentistry in the State of Tennessee for over 20 years. Docket No. 57-2, Affidavit of Helen L. Coleman, D.D.S. ("Coleman Aff."), ¶ 2. Since May of 2011, Dr. Coleman has been employed by Corizon, Inc., and was the Regional Dental Director for them. *Id.*, ¶ 3. In that role, Dr. Coleman interacts and works with inmates, dental, medical, security, and support staff. *Id.* She participates in the hiring and orientation of all dentists in all the Correctional institutions in Tennessee, including DSNF. *Id.* As part of her position, Dr. Coleman reviewed Plaintiff's dental records spanning June 19, 2012 through June 26, 2012, and she provided a second opinion regarding the dental services provided to Plaintiff by Defendant. *Id.* Dr. Coleman is familiar with the recognized standard of professional practice applicable to providing dental care to inmates in Nashville, Tennessee in 2012 (to at least the time of her Affidavit). *Id.*

6

Dr. Coleman has personal knowledge of the treatment rendered to Plaintiff and has also reviewed his dental chart and x-rays. *Id.*

On September 14, 2012, Dr. Coleman reviewed Plaintiff's dental chart as part of her responsibilities as the Regional Director of Dentistry. *Id.*, ¶ 7. Dr. Coleman determined that the care rendered to Plaintiff was reasonable, appropriate, and commensurate with the recognized standard of care, and that no further treatment, surgery, and/or additional medications were warranted. *Id.*

Dr. Coleman personally examined Plaintiff on November 27, 2012. *Id.*, ¶¶ 8, 10. Plaintiff complained to Dr. Coleman that he had experienced pain for 2 months, but was "fine now." *Id.* Dr. Coleman took new x-rays of the area where tooth number 13 had been extracted. *Id.*, ¶ 8. Based on her examination and the radiographs, Dr. Coleman determined that there was "no root tips" or "tooth structure of any kind found in [the] socket" where tooth number 13 had been. *Id.* She further determined that the socket for tooth number 13 was healing well; that there was no evidence of abscess, dry socket, redness, or inflammation; and that no further dental treatment, including oral surgery or pain medications, was necessary. *Id.*

As the treating dentist, it was Defendant's decision to prescribe pain medication to treat Plaintiff for the pain related to his tooth extraction based on Defendant's objective findings. Def. Aff., ¶ 12. Defendant examined Plaintiff's mouth three times, and there was no reasonable need to continue pain medication beyond the prescribed duration in the absence of a supporting diagnosis. *Id.* Based on Defendant's observations, Plaintiff had a normal and expected course of healing post-procedure, without any substantive complications to include abscess or alveolar osteitis ("dry socket"). *Id.*

7

Plaintiff received adequate, reasonable, and appropriate dental care with respect to the extraction of tooth number 13, and his pain complaints post-extraction. *Id.*, ¶¶ 9, 11, 12. Plaintiff's dental care was absolutely commensurate with the applicable standard of care. *Id.*, ¶¶ 9, 12. Defendant performed Plaintiff's tooth extraction without difficulty, using an anesthetic and forceps, in the same manner as he performs similar extractions. *Id.*, ¶ 9. Plaintiff's extraction was in compliance with the recognized standard of professional practice for a general dentist practicing in a Nashville prison in 2012. *Id.*, ¶¶ 9, 12. The performance of the extraction complied with modern dental science and was of an acceptable quality by prudent professional standards for dentists practicing in a similar setting and community. *Id.* Some damage to the extraction site as well as short-term pain, bleeding, and/or swelling post-extraction are known and anticipated outcomes of the procedure and consistent with prudent professional standards of dentistry. *Id.*, ¶ 9. Defendant notes that, since his tooth extraction on June 19, 2012, Plaintiff has not suffered any serious dental needs, nor has he had any dental condition or diagnosis mandating treatment. *Id.*, ¶ 10.

Based on Defendant's knowledge, training, experience, personal involvement, and review of Plaintiff's records and radiographs, Plaintiff has not been denied any dental treatment for conditions that posed a substantial risk to him, nor has Defendant been indifferent to, or disregarded, any substantial risk to Plaintiff with regard to his dental care, tooth extraction, or aftermath thereof. *Id.*, ¶¶ 11, 12. Defendant has never refused to treat Plaintiff, and has not retaliated against him for filing this lawsuit. *Id.*, second ¶ 12.[4] All decisions regarding

---

[4] Defendant has two paragraphs numbered 12, and no paragraph numbered 15. *See* Docket No. 57-1, p. 8, 9.

Plaintiff's dental care and treatment have been made based on sound principles of dental science and in his best interest. *Id.*

Based on her review of Plaintiff's dental records, her personal examination of Plaintiff, and her knowledge, training, and experience, Dr. Coleman concurs with the testimony of Defendant, contained herein, regarding the appropriate care he provided to Plaintiff before, during, and after the extraction of tooth number 13. Coleman Aff.*,* ¶¶ 4-15. No agent or employee of Corizon has denied dental treatment to Plaintiff for any conditions that posed a substantial risk to him, nor has any agent of employee of Corizon disregarded any substantial risk to Plaintiff or acted with deliberate indifference to him with respect to the June 2012 extraction of tooth number 13. *Id.*, ¶ 11.

Plaintiff did not suffer any alleged injury as a result of any policy, procedure, custom, or practice of Corizon, Inc. Def. Aff., ¶ 13; Coleman Aff., ¶ 14. Defendant has not participated in the creation of any policies and procedures related to dental care administered at DSNF. Def. Aff., ¶ 14.

### III.   Analysis

**A.  Local Rules 7.01(b) and 56.01(c) and (g)**

Local Rule 7.01(b) states, in pertinent part:

> Each party opposing a motion shall serve and file a response, memorandum, affidavits, and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed the pending Motion in June of 2013. Docket No. 57. Plaintiff has failed

to respond to Defendant's Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> c. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant ...
>
> . . .
>
> g. Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has likewise failed to respond to Defendant's Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

**B. Summary Judgment Standards**

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met his

burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party

is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C. 42 U.S.C. § 1983**

**1. Generally**

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**2. Eighth Amendment**

12

### a. Generally

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

### b. Deliberate Indifference To Serious Medical Needs

The State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated. *Estelle,* 429 U.S. at 104, 97 S. Ct. at 291.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle,* 429 U.S. at 104. This is true "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access

to medical care or intentionally interfering with the treatment once prescribed." *Id*. at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105. For instance, courts have held that the accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that Eighth Amendment deliberate indifference claims must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). Under the Eighth Amendment, inmate plaintiffs, must allege, at the very least, unnecessary pain or suffering resulting from prison officials' deliberate indifference. *Id*. (prisoner alleging that he suffered pain and mental anguish from delay in medical care states a valid Eighth Amendment claim).

As for the subjective element, the Sixth Circuit has held that "a determination of deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). There must, however, be a showing of deliberate indifference to an inmate's serious medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (*citing Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976)). In fact, "[k]nowledge of the

asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). The inquiry, therefore, according to the Sixth Circuit, is "[w]as this individual prison official aware of the risk to the inmate's health and deliberately indifferent to it?" *Thaddeus-X*, 175 F.3d at 402 (*citing Farmer v. Brennan*, 511 U.S. 825, 837, 844, 114 S. Ct. 1970, 1979, 1982-83, 128 L. Ed. 2d 811 (1994)).

## C. The Case at Bar

Plaintiff sues Defendant in his official and individual capacities. Docket No. 1. As noted, Plaintiff alleges that Defendant provided him negligent dental care and then subsequently denied him dental care, in deliberate indifference to his serious dental needs. Docket Nos. 1, 4.

It is undisputed that Defendant examined Plaintiff's mouth three times; that Plaintiff had a normal and expected course of healing post-procedure, without any substantive complications; and that Plaintiff received adequate, reasonable, and appropriate dental care with respect to the extraction of tooth number 13, and his pain complaints post-extraction. *Id.*, ¶¶ 9, 11, 12. Plaintiff's dental care was absolutely commensurate with the applicable standard of care. *Id.,* ¶¶ 9, 12. Defendant performed Plaintiff's tooth extraction without difficulty, using an anesthetic and forceps, in the same manner as he performs similar extractions. *Id.*, ¶ 9. Plaintiff's extraction was in compliance with the recognized standard of professional practice for a general dentist practicing in a Nashville prison in 2012. *Id.*, ¶¶ 9, 12. The performance of the extraction complied with modern dental science and was of an acceptable quality by prudent professional standards for dentists practicing in a similar setting and community. *Id.*

Additionally, Defendant has not denied Plaintiff any dental treatment for conditions that

15

posed a substantial risk to him, nor has Defendant been indifferent to, or disregarded, any substantial risk to Plaintiff with regard to his dental care, tooth extraction, or aftermath thereof. Def. Aff., ¶¶ 11, 12. Defendant has never refused to treat Plaintiff, and has not retaliated against him for filing this lawsuit. *Id.*, second ¶ 12. All decisions regarding Plaintiff's dental care and treatment were made based on sound principles of dental science and in his best interest. *Id.*

Moreover, no agent or employee of Corizon has denied dental treatment to Plaintiff for any conditions that posed a substantial risk to him, nor has any agent of employee of Corizon disregarded any substantial risk to Plaintiff or acted with deliberate indifference to him with respect to the June 2012 extraction of tooth number 13. Coleman Aff., ¶ 11.

Plaintiff did not suffer any alleged injury as a result of any policy, procedure, custom, or practice of Corizon, Inc. Def. Aff., ¶ 13; Coleman Aff., ¶ 14.

## IV. Conclusion

For the foregoing reasons, the undersigned concludes that, viewing all the facts and inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and Defendant is entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendant's Motion for Summary Judgment (Docket No. 57) be GRANTED, and that this action be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of

service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge